IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **VIRSNA SIENG,** | CASE NO. 2:08-cv-00044 |
| | JUDGE WATSON |
| **Petitioner,** | MAGISTRATE JUDGE ABEL |
| v. | |
| **J. WOLFE, Warden,** | |
| **Respondent.** | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This action involves petitioner's convictions after a jury trial in the Franklin County Court of Common Pleas on trafficking in cocaine in an amount equal to or exceeding 100 to 500 grams. The trial court sentenced petitioner to seven years incarceration. Petitioner's convictions were affirmed by the Ohio Tenth District Court of Appeals and Ohio Supreme Court; however, the Ohio Supreme Court reversed petitioner's sentence and remanded the case to the trial court for re-sentencing under *State v. Foster*, 109 Ohio St.3d 1 (2006). The trial court thereafter re-imposed the same sentence, which sentence the appellate court affirmed on appeal.

In this habeas corpus petition, petitioner asserts that he was denied a fair trial due to improper out-side influence on the jury; that he is actually innocent of the charges; that the evidence was constitutionally insufficient to sustain his conviction; that his sentence is unconstitutional; and that he was denied the effective assistance of counsel. This matter is before the Court on the instant petition, respondent's return of writ,

petitioner's traverse, respondent's supplemental return of writ, petitioner's reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge concludes that peti-tioner's claims remain unexhausted. The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED** without prejudice unless petitioner notifies the Court within ten (10) days of his deletion of his unexhausted claim of ineffective assistance of counsel.

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> According to the state's evidence, a confidential police informant, who knew defendant for 17 or 18 years, telephoned defendant several times on March 2, 2002 to arrange the purchase of cocaine from him. The police tape recorded the telephone calls, and defendant admitted it was his voice on the tapes. In the telephone conversations, defendant agreed to sell the informant a quarter-kilogram of cocaine for $7,800 and arranged to meet the informant at a certain restaurant.
>
> The informant, who the police wired with a listening device, drove to the restaurant's parking lot, which several officers kept under surveillance. While he was waiting for defendant, the informant again telephoned defendant; defendant this time offered to sell the informant a half-kilogram of cocaine, with the informant paying him $7,800 cash for the initial quarter-kilogram and defendant fronting the other quarter-kilogram until the informant could pay him an additional $7,800 at a later date. At approximately 8:30 p.m., defendant met with the informant at the restaurant parking lot and reiterated his offer to sell the informant a half-kilogram of cocaine, with defendant fronting half that amount for later payment. Defendant made arrangements with the informant to meet him at a designated park after defendant

picked up the cocaine.

A police officer that was assigned as part of the "takedown" team drove to an alley near the park where defendant and the informant were to meet. The officer and a fellow officer in the police car both wore black vests with "POLICE" written across the front. The officer testified that as defendant approached the park in a GMC Denali SUV, defendant unexpectedly drove down the alley, and his SUV came almost "nose to nose" with the police car, shining its headlights into the police car's passenger compartment. A male passenger who was in defendant's SUV testified that when defendant saw the officer's car in the alley, defendant said, "Oh, shit, the police." (Tr. 200.) Defendant stopped his vehicle, reversed out of the alley, and sped away with several police cars in pursuit.

The pursuit ended at the rear of the Hot Spot Bar on West Broad Street in Columbus. Defendant's male passenger testified that defendant instructed him to take a package that was sitting on the middle console and run into the bar. The passenger complied, and once inside the bar he gave the package to an acquaintance. A police officer whose car arrived at the bar behind defendant's SUV testified she saw the male passenger exit defendant's SUV and run into the back door of the bar.

Officers arrested defendant and detained a female passenger in his SUV. From defendant the officers confiscated $2,000 cash, a cell-phone, and a driver's license with an address that apparently was not defendant's, together with heavy gold and diamond jewelry that defendant was wearing. In a search of the Hot Spot Bar, officers arrested the male passenger who had been seen running from defendant's vehicle into the bar. The police recovered a blue plastic bag in a linen bin behind the bar that the passenger identified as the package he had taken from defendant's vehicle. Laboratory testing confirmed the substance in the bag was 498.8 grams of cocaine powder.

> In his trial testimony, defendant admitted that he knowingly offered to sell the confidential police informant a half-kilogram of cocaine. Defendant, however, testified he had no intent to actually sell the informant any drugs. Rather, he made the statements as part of a sham in which he intended only to lure the informant to the park, beat him up, and take his money. Defendant stated he planned on beating and robbing the informant to teach the police a lesson because he knew the informant was working for the police.

*State v. Darks*, 2005 WL 555664 (Ohio 10th App. Dist. March 10, 2005).

> Pursuant to indictment, defendant was charged with trafficking in cocaine in an amount equal to or exceeding 100 grams but less than 500 grams. R.C. 2925.03(C)(4)(e). The jury convicted defendant as charged; the trial court sentenced defendant to a seven-year prison term and imposed a mandatory $15,000 fine. By supplemental entry, the court denied defendant's request for waiver of the fine.

*Id.* Petitioner filed a timely appeal. He asserted the following assignments of error:

> Assignment of Error No. 1:
>
> Defendant-Appellant was deprived of his right to due process and a reliable jury determination as to each and every element of the charged crime under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 5, 10 and 16 as a result of (a) the trial court's refusal to instruct the jury in accordance with 4 O.J.I. § 525.03(3) that the term "offer" as used in R.C. 2925.03(A)(1) (the trafficking in drugs statute) means "to present for acceptance or rejection," (b) its giving of an incomplete instruction that permitted the jury to convict him of trafficking in drugs upon mere proof of an oral declaration of a readiness or willingness to sell a con-trolled substance, and (c) the prosecutor's improper argument to the jury that Defendant-Appellant had made a full confession to the crime of trafficking in cocaine when he testified in court

that he used the false pretense of a drug deal solely for the purpose of creating a ruse to rob the police informant.

Assignment of Error No. 2:

The following erroneous evidentiary rulings and instances of overreaching by the prosecutor, separately and/or in combination, violated Defendant-Appellant's right to due process and a fundamentally jury fair trial [sic] under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 10 and 16:(a) the admission of expensive gaudy jewelry taken from Defendant-Appellant at the time of his arrest and a photograph of him wearing the jewelry for the sole purpose of portraying him as a stereotypical drug dealer, (b) the prosecutor's patently improper question to Defendant-Appellant whether his in-court explanation of events was the first time he told his "story" to a law enforcement officer, and (c) the exclusion of evidence that explained why Defendant-Appellant had an honestly held belief that the police had conspired against him.

Assignment of Error No. 3:

Defendant-Appellant's conviction for trafficking in cocaine is not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. Amend. V and XIV; or, alternatively, is against the manifest weight of the evidence.

Assignment of Error No. 4:

The trial court's decision to sentence Defendant-Appellant to a seven year prison term for trafficking in cocaine was contrary to law and violated his right to presentment to a grand jury, his right to trial by jury, and his right to due process under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 5, 10 and 16 due to the following procedural defects: (a) the omission of an allegation in the indictment as to any of the additional facts required by R.C. 2929.14(B) for the imposition of a prison term in excess of the shortest prison tem

> of two years for a second degree felony and (b) the lack of a
> jury finding as to the existence of those facts under the be-
> yond a reasonable doubt standard.
>
> Assignment of Error No. 5:
>
> The trial court erred and abused its discretion when it im-
> posed a maximum fine of $15,000 as part of the sentence.

*See id.* On March 10, 2005, the appellate court affirmed the trial court's judgment. *Id.* Petitioner filed a timely appeal to the Ohio Supreme Court. *Exhibit 12 to Return of Writ.* On August 10, 2005, the Ohio Supreme Court accepted the appeal on his claim that petitioner's sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), and held the case pending a decision in *State v. Foster, supra*, 109 Ohio St.3d at 1. *State v. Seing*, 106 Ohio St.3d 1481 (2005); *Exhibit 14 to Return of Writ.* On May 3, 2006, the Ohio Supreme Court reversed the appellate court's decision on this claim, and remanded the case to the trial court for re-sentencing under *Foster*. *Exhibit 15 to Return of Writ.* On July 5, 2006, the Ohio Supreme Court denied petitioner's motion for reconsideration. *Exhibit 18 to Return of Writ.*

> On July 20, 2006, the trial court conducted a new sentencing
> hearing. By entry filed July 25, 2006, the court sentenced
> appellant to a seven-year term of incarceration. The trial
> court filed a corrected entry on August 9, 2006.

*State v. Seing*, 2007 WL 949476 (Ohio App. 10th Dist. March 30, 2007). Petitioner again filed a timely appeal in which he asserted the following assignments of error:

> Assignment of Error No. 1:
>
> The court of common pleas violated Defendant-Appellant's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which incorporates principles of the Ex Post Facto Clause of Article I, § 10, by re-sentencing him to a prison term that exceeded the "maximum" sentence which could be imposed under the laws in effect at the time of his offense before applying any sentence enhancement factors found to be unconstitutional in *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.
>
> Assignment of Error No. 2:
>
> The seven year prison term to which Defendant-Appellant was re-sentenced for the second degree felony of trafficking in cocaine is contrary to law because the court of common pleas misapplied the statutory seriousness and recidivism factors in the following respects: (a) the court relied upon factors which did not indicate that Defendant-Appellant's criminal conduct was "more serious" than conduct normally constituting the offense of trafficking in cocaine, (b) the court relied on the fact of Defendant-Appellant's imprisonment for a felony conviction which was subsequently reversed on appeal as a factor indicating he was more "likely" to re-offend, and (c) the court, in assessing risk of recidivism, failed to weigh Defendant-Appellant's remorse and positive change of attitude as of the date of the re-sentencing hearing against his untruthfulness and negative demeanor when he testified in his own behalf at trial more than two years earlier.

*See id.* On March 30, 2007, the appellate court affirmed the trial court's judgment. *Id.*

On August 29, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Seing,* 114 Ohio St.3d 1509 (2007). On October 24, 2007, the Ohio Supreme Court denied petitioner's motion for reconsideration. *State v. Seing,* 115 Ohio St.3d 1445

(2007).

On January 15, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. Deprived the right to a reliable jury.
>
> The determination of the jury was steered, and not beyond reasonable doubt. The jury clearly lost its way.
>
> 2. Actual innocent of the indicted charge.
>
> The facts show a clear claim of innocence of the indicted charge.
>
> 3. Sentence is contrary to law and constitution.
>
> The sentence does not constitutionally meet the facts.
>
> 4. Insufficient evidence which caused miscarriage of justice.
>
> The evidence is insufficient to render guilty, when in all actuality renders a favorable showing of innocence of the indicted charge.
>
> 5. Ineffective assistance of counsel.[1]

---

[1] *See Objections*, Doc. No. 8.

It is the position of the respondent that the instant petition is unexhausted, and that petitioner's claims otherwise are procedurally defaulted or without merit.

## EXHAUSTION

In claim five, petitioner asserts that he was denied the effective assistance of counsel because he was represented by the same attorney at trial and on direct appeal, and because his attorney failed to raise the same issues he presents in these federal habeas corpus proceedings. *See Traverse; Reply*. Petitioner asserts that he was denied the effective assistance of counsel at trial and on direct appeal. *See id.* These claims have never been presented to the state courts.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Silverburg v. Evitts,* 993 F.2d 124, 126 (6th Cir.1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844 (1999); *Manning v. Alexander,* 912 F.2d 878, 881 (6th Cir.1990). Where alternative state remedies are available to consider the same claim, exhaustion of one of these remedies is all that is necessary. A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v.*

9

*Rees,* 822 F.2d 1418, 1420 n. 3 (6th Cir.1987).

Because petitioner was represented by the same attorney at trial and on direct appeal, his claim of ineffective assistance of trial counsel would properly be raised in a petition for post conviction relief pursuant to O.R.C. §2953.21. *See State v. Cole,* 2 Ohio St.3d 112 (1982). The time period to file such action has now expired, and the record does not reflect that petitioner can meet the requirements for consideration of this claim in a delayed post conviction petition under O.R.C. §2953.23, which provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

Additionally, petitioner's claim of ineffective assistance of appellate counsel would properly be raised in an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). Although the time period to file such action has expired, petitioner may still pursue a delayed Rule 26(B) application. Therefore, the instant habeas corpus petition remains unexhausted. Further, the record does not reflect that a stay of proceedings is appropriate. See *Rhines v. Weber*, 544 U.S. 269 (2005).

In *Rhines v. Weber, supra*, the United States Supreme Court stated:

> Staying a federal habeas petition frustrates AEDPA's object-ive of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition....
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only approp-riate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An applica-tion for a writ of habeas corpus may be denied on the mer-its, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").
>
> \*\*\*
>
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to

11

> exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. *See Lundy,* 455 U.S., at 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions. For the same reason, if a petitioner presents a district court with a mixed petition and the court determines that stay and abeyance is inappropriate, the court should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief. See *id.,* at 520, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (plurality opinion) ("[A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims").

*Rhines v. Weber, supra,* 544 U.S. at 277-278. The record in this case fails to reflect either that petitioner can establish good cause for his failure to exhaust state court remedies, or that his claims of ineffective assistance of counsel are potentially meritorious. The time period for filing a post conviction petition and Rule 26(B) application has long since expired, and petitioner will be barred from raising his claims in the state courts absent a showing of "good cause" for his untimely filing, *see* Ohio Appellate Rule 26(B)(2)(b), or meeting the requirements for a delayed post conviction petition under O.R.C. §2953.23. Nothing in the record indicates that he can meet such standard. In *Neville v. Dretke,* 423 F.3d 474, 480 (5th Cir.2005), the United States Court of Appeals for the Fifth Circuit held that claims are "plainly meritless" for purposes of deciding

whether to grant a stay of habeas corpus proceedings where the petitioner is procedurally barred from raising his unexhausted claims in the state courts. *See also Carter v. Friel,* 415 F.Supp.2d 1314, 1321-22 (D.Utah 2006) (same).

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** without prejudice, unless petitioner notifies the Court within ten (10) days that he is deleting his unexhausted claims of ineffective assistance of counsel from this petition.

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the

decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                      s/Mark R. Abel
                                      United States Magistrate Judge