## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

VIRSNA SIENG,

      Petitioner,

      v.

J. WOLFE, Warden,

      Respondent.

CASE NO. 2:08–cv–44

JUDGE WATSON
MAGISTRATE JUDGE ABEL

## OPINION AND ORDER

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. On June 9, 2009, the Magistrate Judge issued a *Report and Recommendation* recommending that the instant petition for a writ of habeas corpus be dismissed without prejudice as unexhausted unless petitioner notified the Court that he was deleting his unexhausted claim five from the petition. Doc. No. 12. For the reasons that follow, petitioner's objections to the Magistrate Judge's *Report and Recommendation* are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Petitioner's alternative request to withdraw his unexhausted claim five from the petition and proceed on his remaining exhausted claims hereby is **GRANTED**. However, because this Court concludes that the remainder of petitioner's claims one through four are procedurally defaulted or without merit and therefore, this action is hereby **DISMISSED**.

Petitioner's motion for judgment in his favor and for an evidentiary hearing, see Doc. No. 15, is **DENIED**.

Petitioner objects to the Magistrate Judge's *Report and Recommendation. See* Doc. No. 13. Petitioner states that he has demonstrated cause for failing to exhaust state court remedies as to his claims of ineffective assistance of counsel. *See id.* Pursuant to 28 U.S.C. §636(b), this Court has conducted a de novo review of the Magistrate Judge's *Report and Recommendation.* Petitioner failed to present his claims of ineffective assistance of appellate counsel to the state courts. Further, for the reasons detailed in the Magistrate Judge's *Report and Recommendation*, this Court likewise concludes that record fails to indicate that a stay is warranted under *Rhines v. Weber*, 544 U.S. 269 (2005). Therefore, petitioner's objections are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED.**

Petitioner has alternatively requested to withdraw claim five from this habeas corpus petition. *See* Doc. No. 13. That request hereby is **GRANTED.** This Court therefore will proceed to consider petitioner's remaining exhausted claims. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, this action is hereby Magistrate Judge **DISMISSED**.

## FACTS and PROCEDURAL HISTORY

The facts and procedural history of this case are outlined in the Magistrate Judge's prior *Report and Recommendation* but are repeated here. The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> According to the state's evidence, a confidential police informant, who knew defendant for 17 or 18 years, telephoned defendant several times on March 2, 2002 to arrange the purchase of cocaine from him. The police tape recorded the

telephone calls, and defendant admitted it was his voice on the tapes. In the telephone conversations, defendant agreed to sell the informant a quarter-kilogram of cocaine for $7,800 and arranged to meet the informant at a certain restaurant.

The informant, who the police wired with a listening device, drove to the restaurant's parking lot, which several officers kept under surveillance. While he was waiting for defendant, the informant again telephoned defendant; defendant this time offered to sell the informant a half-kilogram of cocaine, with the informant paying him $7,800 cash for the initial quarter-kilogram and defendant fronting the other quarter-kilogram until the informant could pay him an additional $7,800 at a later date. At approximately 8:30 p.m., defendant met with the informant at the restaurant parking lot and reiterated his offer to sell the informant a half-kilogram of cocaine, with defendant fronting half that amount for later payment. Defendant made arrangements with the informant to meet him at a designated park after defendant picked up the cocaine.

A police officer that was assigned as part of the "takedown" team drove to an alley near the park where defendant and the informant were to meet. The officer and a fellow officer in the police car both wore black vests with "POLICE" written across the front. The officer testified that as defendant approached the park in a GMC Denali SUV, defendant unexpectedly drove down the alley, and his SUV came almost "nose to nose" with the police car, shining its headlights into the police car's passenger compartment. A male passenger who was in defendant's SUV testified that when defendant saw the officer's car in the alley, defendant said, "Oh, shit, the police." (Tr. 200.) Defendant stopped his vehicle, reversed out of the alley, and sped away with several police cars in pursuit.

The pursuit ended at the rear of the Hot Spot Bar on West Broad Street in Columbus. Defendant's male passenger testified that defendant instructed him to take a package that was sitting on the middle console and run into the bar. The passenger complied, and once inside the bar he gave the package to an acquaintance. A police officer whose car arrived at the bar behind defendant's SUV testified she saw the male passenger exit defendant's SUV and run into the back door of the bar.

Officers arrested defendant and detained a female passenger in his SUV. From defendant the officers confiscated $2,000 cash, a cell-phone, and a driver's license with an address that apparently was not defendant's, together with heavy gold and diamond jewelry that defendant was wearing. In a search of the Hot Spot Bar, officers arrested the male passenger who had been seen running from defendant's vehicle into the bar. The police recovered a blue plastic bag in a linen bin behind the bar that the passenger identified as the package he had taken from defendant's vehicle. Laboratory testing confirmed the substance in the bag was 498.8 grams of cocaine powder.

In his trial testimony, defendant admitted that he knowingly offered to sell the confidential police informant a half-kilogram of cocaine. Defendant, however, testified he had no intent to actually sell the informant any drugs. Rather, he made the statements as part of a sham in which he intended only to lure the informant to the park, beat him up, and take his money. Defendant stated he planned on beating and robbing the informant to teach the police a lesson because he knew the informant was working for the police.

*State v. Sieng*, 2005 WL 555664, *3-*4 (Ohio 10th App. Dist. March 10, 2005).

Pursuant to indictment, defendant was charged with trafficking in cocaine in an amount equal to or exceeding 100 grams but less than 500 grams. R.C. 2925.03(C)(4)(e). The jury convicted defendant as charged; the trial court sentenced defendant to a seven-year prison term and imposed a mandatory $15,000 fine. By supplemental entry, the court denied defendant's request for waiver of the fine.

*Id.* Petitioner filed a timely appeal. He asserted the following assignments of error:

Assignment of Error No. 1:

Defendant-Appellant was deprived of his right to due process and a reliable jury determination as to each and every element of the charged crime under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 5, 10 and 16 as a result of (a) the trial court's refusal to instruct the jury in accordance with 4 O.J.I. §

525.03(3) that the term "offer" as used in R.C. 2925.03(A)(1) (the trafficking in drugs statute) means "to present for acceptance or rejection," (b) its giving of an incomplete instruction that permitted the jury to convict him of trafficking in drugs upon mere proof of an oral declaration of a readiness or willingness to sell a controlled substance, and (c) the prosecutor's improper argument to the jury that Defendant-Appellant had made a full confession to the crime of trafficking in cocaine when he testified in court that he used the false pretense of a drug deal solely for the purpose of creating a ruse to rob the police informant.

Assignment of Error No. 2:

The following erroneous evidentiary rulings and instances of overreaching by the prosecutor, separately and/or in combination, violated Defendant-Appellant's right to due process and a fundamentally jury fair trial [sic] under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 10 and 16:(a) the admission of expensive gaudy jewelry taken from Defendant-Appellant at the time of his arrest and a photograph of him wearing the jewelry for the sole purpose of portraying him as a stereotypical drug dealer, (b) the prosecutor's patently improper question to Defendant-Appellant whether his in-court explanation of events was the first time he told his "story" to a law enforcement officer, and (c) the exclusion of evidence that explained why Defendant-Appellant had an honestly held belief that the police had conspired against him.

Assignment of Error No. 3:

Defendant-Appellant's conviction for trafficking in cocaine is not supported by evidence sufficient to satisfy the requirements of due process under U.S. Const. Amend. V and XIV; or, alternatively, is against the manifest weight of the evidence.

Assignment of Error No. 4:

The trial court's decision to sentence Defendant-Appellant to a seven year prison term for trafficking in cocaine was contrary to law and violated his right to presentment to a grand jury, his right to trial by jury, and his right to due process under U.S. Const. Am. V, VI and XIV and Ohio Const. Art. I, §§ 5, 10 and

16 due to the following procedural defects: (a) the omission of an allegation in the indictment as to any of the additional facts required by R.C. 2929.14(B) for the imposition of a prison term in excess of the shortest prison term of two years for a second degree felony and (b) the lack of a jury finding as to the existence of those facts under the beyond a reasonable doubt standard.

Assignment of Error No. 5:

The trial court erred and abused its discretion when it imposed a maximum fine of $15,000 as part of the sentence.

*See id. at *1.* On March 10, 2005, the appellate court affirmed the trial court's judgment. *Id.* Petitioner filed a timely appeal to the Ohio Supreme Court. *Exhibit 12 to Return of Writ.* On August 10, 2005, the Ohio Supreme Court accepted the appeal on his claim that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004), and held the case pending the decision in *State v. Foster*, 109 Ohio St.3d 1 (2006). *State v. Seing*, 106 Ohio St.3d 1481 (2005); *Exhibit 14 to Return of Writ.* On May 3, 2006, the Ohio Supreme Court reversed the appellate court's decision on this claim, and remanded the case to the trial court for re-sentencing under *Foster*. *Exhibit 15 to Return of Writ.* On July 5, 2006, the Ohio Supreme Court denied petitioner's motion for reconsideration. *Exhibit 18 to Return of Writ.*

On July 20, 2006, the trial court conducted a new sentencing hearing. By entry filed July 25, 2006, the court sentenced appellant to a seven-year term of incarceration. The trial court filed a corrected entry on August 9, 2006.

*State v. Seing*, 2007 WL 949476 (Ohio App. 10th Dist. March 30, 2007). Petitioner again filed a timely appeal in which he asserted the following assignments of error:

Assignment of Error No. 1:

The court of common pleas violated Defendant-Appellant's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, which incorporates principles of the Ex Post Facto Clause of Article I, § 10, by re-sentencing him to a prison term that exceeded the "maximum" sentence which could be imposed under the laws in effect at the time of his offense before applying any sentence enhancement factors found to be unconstitutional in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

Assignment of Error No. 2:

The seven year prison term to which Defendant-Appellant was re-sentenced for the second degree felony of trafficking in cocaine is contrary to law because the court of common pleas misapplied the statutory seriousness and recidivism factors in the following respects: (a) the court relied upon factors which did not indicate that Defendant-Appellant's criminal conduct was "more serious" than conduct normally constituting the offense of trafficking in cocaine, (b) the court relied on the fact of Defendant-Appellant's imprisonment for a felony conviction which was subsequently reversed on appeal as a factor indicating he was more "likely" to re-offend, and (c) the court, in assessing risk of recidivism, failed to weigh Defendant-Appellant's remorse and positive change of attitude as of the date of the re-sentencing hearing against his untruthfulness and negative demeanor when he testified in his own behalf at trial more than two years earlier.

*See id*. On March 30, 2007, the appellate court affirmed the trial court's judgment. *Id*. On August 29, 2007, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Seing,* 114 Ohio St.3d 1509 (2007). On October 24, 2007, the Ohio Supreme Court denied petitioner's motion for reconsideration. *State v. Seing,* 115 Ohio St.3d 1445 (2007).

On January 15, 2008, petitioner filed the instant *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. §2254.  He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1.  Deprived the right to a reliable jury.
>
> The determination of the jury was steered, and not beyond reasonable doubt.  The jury clearly lost its way.
>
> 2.  Actual innocent of the indicted charge.
>
> The facts show a clear claim of innocence of the indicted charge.
>
> 3.  Sentence is contrary to law and constitution.
>
> The sentence does not constitutionally meet the facts.
>
> 4.  Insufficient evidence which caused miscarriage of justice.
>
> The evidence is insufficient to render guilty, when in all actuality renders a favorable showing of innocence of the indicted charge.
>
> 5.  Ineffective assistance of counsel

It is the position of the respondent that all of petitioner's claims are without merit.

## PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required

fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) *(per curiam)*; *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 447 U.S. 478, 485 (1986); *Engle v. Issac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for

review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

In claim one, petitioner asserts that he was denied an impartial jury due to improper outside influence on the jury. Specifically, petitioner alleges that a letter from the trial judge responding to the jury's question on whether they could "change the guilty verdict to attempted trafficking," which indicated in response to that question, "No[], you cannot," deprived him of a fair trial. *See Traverse; Exhibit A to Traverse.* Petitioner appears to contend that he was entitled to a hearing under *Remmer v. United States*, 347 U.S. 227 (1954). *See id.*

This claim, however, has never been presented to the state courts. Further, petitioner may now no longer present such claim to the state court's under Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule due to the nature of petitioner's procedural default. This Court deems the first and second parts of the *Maupin* test to have been satisfied.

This Court must also decide whether the procedural rules at issue constitute an adequate and independent bases upon which to foreclose review of petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin*, 785 F.2d at 138. Under this analysis, the procedural rules barring claim one constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The requirement

that all available claims be presented at the first opportunity serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole*, *supra; State v. Ishmail, supra; State v. Perry, supra*.

To the extent that petitioner's claim may rely on matters that are not readily apparent from the face of the record, his claim should have been raised in a petition for post conviction relief pursuant to O.R.C. §2953.21. The time period for filing such action has now expired. Further, the record fails to reflect that petitioner can meet the requirements for consideration of the merits of his claim in a delayed post conviction petition under O.R.C. §2953.23, which provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.
>
> (2) The petitioner shows by clear and convincing evidence that,

> but for constitutional error at trial, no reasonable factfinder
> would have found the petitioner guilty of the offense of which
> the petitioner was convicted or, if the claim challenges a
> sentence of death that, but for constitutional error at the
> sentencing hearing, no reasonable factfinder would have found
> the petitioner eligible for the death sentence.

The record fails to demonstrate that petitioner can meet this standard here. This Court

therefore deems the first and second parts of the *Maupin* test to have been met. Further,

petitioner has failed to establish cause for his failure to follow the state procedural rules or

actual prejudice from the constitutional violation that he alleges. He therefore has waived

his right to present claim one in these proceedings.

Beyond the four-part *Maupin* analysis, this Court is required to determine whether

this is "an extraordinary case, where a constitutional violation has probably resulted in the

conviction of one who is actually innocent . . . ." *Murray v. Carrier,* 477 U.S. at 495.

Petitioner alleges that he is actually innocent of the charges. In support of this claim,

petitioner again refers to the same purported instruction by the trial court to the jury

advising them, in response to their inquiry, that petitioner could not be found guilty of

attempted trafficking. Petitioner has failed to meet this standard here.

## CLAIMS TWO AND FOUR

Claims two through four are related and will be considered together here. In claim

two, petitioner asserts that he is actually innocent of the charges. In claim four, petitioner

asserts that the evidence was constitutionally insufficient to sustain his convictions. The

state appellate court rejected petitioner's claim of insufficiency of the evidence as follows:

> [D]efendant claims the jury's verdict is not supported by
> sufficient evidence and is against the manifest weight of the

evidence. Defendant asserts the "offer to sell" element of the drug trafficking statute requires proof that the accused actually present some substance, whether controlled or counterfeit drugs, to the buyer for acceptance or rejection. Defendant contends the record is devoid of any evidence that defendant presented anything to a police informant for his purchase. Defendant argues that, at most, the evidence establishes the crime of attempted trafficking in cocaine, a third-degree felony, R.C. 2923.02, 2925.03(A)(1), (C)(4)(e).

Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. Sufficiency is a test of adequacy. *Id*. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Conley* (Dec. 16, 1993), Franklin App. No. 93AP-387.

\*\*\*

R.C. 2925.03(A)(1) states that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance." In *State v. Patterson* (1982), 69 Ohio St.2d 445, 447, 432 N.E.2d 802, the Ohio Supreme Court observed that R.C. 2925.03(A)(1) establishes two offenses: (1) *knowingly selling* a controlled substance, and (2) *knowingly offering* to sell a controlled substance. Here, defendant was charged with the latter offense. The conduct proscribed in "knowingly offering" is *offering to sell* a controlled substance, *not* offering the controlled substance itself. *State v. Scott* (1982), 69 Ohio St.2d 439, 440, 432 N.E.2d 798. According to the Supreme Court, an "offer to sell" means "to declare one's readiness or willingness to sell a controlled substance." *Id*.

The failure of the accused to present a controlled substance is not an automatic or absolute defense to a charge that a defendant made an "offer to sell" a controlled substance. *Patterson,* at 447, 432 N.E.2d 802. Under Ohio law, a defendant may be guilty of offering to sell a controlled substance even when no substance is produced. *Id*. at 450,

432 N.E.2d 802 (Holmes, J., concurring); *State v. Bazzy* (1993), 86 Ohio App.3d 546, 548, 621 N.E.2d 604; *State v. West,* Franklin App. No. 01AP-1238, 2002-Ohio-2777, ¶ 12; *State v. McKenzie* (Sept. 12, 1996), Jefferson App. No. 96-JE-2. The crime is complete when the offer is made. *Scott,* at 441, fn. 2, 432 N.E.2d 798, citing with approval, *State v. Mosley* (1977), 55 Ohio App.2d 178, 182, 380 N.E.2d 731.

The Ohio Supreme Court has refused to engraft an additional production element onto the portion of R.C. 2925.03(A)(1) that prohibits offers to sell a controlled substance. *Scott,* at 440, 432 N.E.2d 798. To determine whether a defendant had the requisite culpable mental state, the court advises that "[t]riers of fact should consider the totality of circumstances and decide whether, in a particular scenario, there is sufficient evidence to prove beyond a reasonable doubt that the accused has *knowingly offered* to sell a controlled substance." (Emphasis added.) *Patterson,* at 447, 432 N.E.2d 802.

According to the state's evidence, a confidential police informant, who knew defendant for 17 or 18 years, telephoned defendant several times on March 2, 2002 to arrange the purchase of cocaine from him. The police tape recorded the telephone calls, and defendant admitted it was his voice on the tapes. In the telephone conversations, defendant agreed to sell the informant a quarter-kilogram of cocaine for $7,800 and arranged to meet the informant at a certain restaurant.

The informant, who the police wired with a listening device, drove to the restaurant's parking lot, which several officers kept under surveillance. While he was waiting for defendant, the informant again telephoned defendant; defendant this time offered to sell the informant a half-kilogram of cocaine, with the informant paying him $7,800 cash for the initial quarter-kilogram and defendant fronting the other quarter-kilogram until the informant could pay him an additional $7,800 at a later date. At approximately 8:30 p.m., defendant met with the informant at the restaurant parking lot and reiterated his offer to sell the informant a half-kilogram of cocaine, with defendant fronting half that amount for later payment. Defendant made arrangements with the informant to meet him at a designated park after defendant picked up the cocaine.

A police officer that was assigned as part of the "takedown" team drove to an alley near the park where defendant and the informant were to meet. The officer and a fellow officer in the police car both wore black vests with "POLICE" written across the front. The officer testified that as defendant approached the park in a GMC Denali SUV, defendant unexpectedly drove down the alley, and his SUV came almost "nose to nose" with the police car, shining its headlights into the police car's passenger compartment. A male passenger who was in defendant's SUV testified that when defendant saw the officer's car in the alley, defendant said, "Oh, shit, the police." (Tr. 200.) Defendant stopped his vehicle, reversed out of the alley, and sped away with several police cars in pursuit.

The pursuit ended at the rear of the Hot Spot Bar on West Broad Street in Columbus. Defendant's male passenger testified that defendant instructed him to take a package that was sitting on the middle console and run into the bar. The passenger complied, and once inside the bar he gave the package to an acquaintance. A police officer whose car arrived at the bar behind defendant's SUV testified she saw the male passenger exit defendant's SUV and run into the back door of the bar.

Officers arrested defendant and detained a female passenger in his SUV. From defendant the officers confiscated $2,000 cash, a cell-phone, and a driver's license with an address that apparently was not defendant's, together with heavy gold and diamond jewelry that defendant was wearing. In a search of the Hot Spot Bar, officers arrested the male passenger who had been seen running from defendant's vehicle into the bar. The police recovered a blue plastic bag in a linen bin behind the bar that the passenger identified as the package he had taken from defendant's vehicle. Laboratory testing confirmed the substance in the bag was 498.8 grams of cocaine powder.

In his trial testimony, defendant admitted that he knowingly offered to sell the confidential police informant a half-kilogram of cocaine. Defendant, however, testified he had no intent to actually sell the informant any drugs. Rather, he made the statements as part of a sham in which he intended only to lure the informant to the park, beat him up, and take his money. Defendant stated he planned on beating and robbing the

informant to teach the police a lesson because he knew the informant was working for the police.

When construed in a light most favorable to the prosecution, the evidence is sufficient to support defendant's conviction for drug trafficking based on an "offer to sell" a controlled substance. Indeed, defendant's admissions at trial that he knowingly offered to sell a half-kilogram of cocaine to the confidential informant were in themselves sufficient to support the jury's verdict of guilt. *Arlen v. State* (1980), 61 Ohio St.2d 168, 175, 399 N.E.2d 1251 (noting that "a party's testimony of facts subversive to his interests is alone sufficient to support a verdict"). Further, given defendant's admissions at trial, the evidence does not weigh heavily in favor of defendant. The jury properly could have found unbelievable defendant's testimony that his offers to sell cocaine to the informant were only a ruse to rob the informant. The verdict was not against the manifest weight of the evidence, and defendant's third assignment of error is overruled.

*State v. Seing, supra*, 2005 WL 555664. The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. §2254(e)(1) provides:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Further, a federal habeas court may not grant relief unless the state court decision contravened or unreasonably applied clearly established federal law or was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding.

*Id.*

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct. 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard here.

To the extent that petitioner asserts his convictions are against the manifest weight of the evidence, such claim is not appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence—as opposed to one based upon insufficient evidence—requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court.

Petitioner does assert that the evidence was constitutionally insufficient to sustain his convictions. Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson, supra*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilty." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A]

reviewing court 'faced with a record that supports conflicting inferences must presume—even if it does not appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326).

Petitioner contends that he had no intent to actually sell the confidential informant any drugs, and that he"only said what [the confidential informant] wanted to hear so that I could beat him up, which I never denied that fact." *See Opposition to Return of Writ*, Doc. No. 8. As discussed by the state appellate court, petitioner testified he knew the confidential informant was a snitch, *Transcript Vol. III*, at 494-495, but told him he agreed to meet him to sell drugs so that he could beat him up and take his money. *Id.* at 503, 513.

> [M]ake[] the cops think twice the next time trying to send a snitch up to people.

*Id.* at 513. Petitioner denied having any drugs in his car. *Id.* at 502. However, he acknowledged that it was his voice on the tape submitted against him at trial, indicating that he would sell the confidential informant cocaine for the sum of $7,800.00. *Id.* at 53.

Under these circumstances, and for the reasons discussed by the state appellate court, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, *Jackson, supra*, the evidence was constitutionally sufficient to sustain petitioner's conviction on cocaine trafficking, in view of his admission that he offered to sell the confidential informant cocaine. As noted by the state appellate court, petitioner was charged with knowingly selling *or offering to sell* a cocaine under O.R.C. 2925.03(A)(1). Therefore, regardless of his testimony that he intended only to beat the confidential

informant and take his money to teach him a lesson, under Ohio law the evidence was constitutionally sufficient to sustain his conviction in view of his uncontroverted taped statements to the confidential informant. *See, e.g., State v. Moss*, 2008 WL 3009693 at *4 (Ohio App. 9th Dist. Aug. 6, 2008) ("[a] person can be found guilty of offering to sell a controlled substance without actually transferring the substance to the buyer") (citation omitted).

Petitioner contends that he is actually innocent of the charge against him based on the foregoing argument, and in view of the jury's note inquiring as to whether they could change the guilty verdict to "attempted" trafficking. *See Opposition to Supplemental Return of Writ*, Doc. No. 8. This Court is not persuaded by petitioner's argument.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id*. at 321, 115 S.Ct. 851.

*Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005)(footnote omitted); *see also House v. Bell*, 547 U.S. 518 (2006). Petitioner has failed to meet this standard here. He has presented no new evidence reflecting he is actually innocent of the charges. Moreover, the United States Supreme Court has held that a free standing claim of actual innocence fails to present an issue appropriate for federal habeas corpus relief. *Herrera v. Collins, supra*, 390 U.S. at 400 ("Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.").

> A claim of actual innocence "is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404 (1993).... [T]his actual innocence "gateway" has limited application. *See Schlup v. Delo,* 513 U.S. 298, 321-22 (1995) (explaining that the fundamental-miscarriage-of-justice exception was intended to remain rare and only be applied in the extraordinary case); *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992) (noting that the exception may be used to reach the merits of: "(a) *successive claims* that raise grounds identical to grounds heard and decided on the merits in a previous petition; (b) new claims, not previously raised, which constitute an *abuse of the writ;* or (c) *procedurally defaulted claims* in which the petitioner failed to follow applicable state procedural rules in raising the claims") (emphasis in original). These bars to habeas petitions are premised on the Court's concerns for the " 'finality, comity, and conservation of scarce judicial resources.' " *House v. Bell,* No. 04-8990, 2006 U.S. LEXIS 4675, at *33 (June 12, 2006) (quoting *Schlup,* 513 U.S. at 324).

*Artiaga v. Money*, 2006 WL 1966612 (N.D. Ohio July 11, 2006). The Supreme Court suggested in *Herrera v. Collins* that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant

unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim," but went on to state that the "threshold showing for such an assumed right would . . . be extraordinarily high." *Id.* at 417. In *House v. Bell, supra*, 547 U.S. at 554-55, the Supreme Court subsequently declined to resolve whether free standing claims of actual innocence are properly considered in habeas corpus proceedings concluding, in any event, that House had not satisfied the "extraordinarily high" threshold for such a hypothetical claim, though he met the *Schlup* gateway standard for review of his procedurally defaulted claims. *Id.* It remains unresolved whether a death sentenced inmate may maintain a free standing claim for habeas relief based on actual innocence. *See In re Davis,* 130 S.Ct. 1 (2009). Courts in the Sixth Circuit have not recognized a free-standing claim of actual innocence:

> Citing *Herrera* and *House,* the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Wright v. Stegall,* No. 05-2419, 2007 WL 2566047, *2-3 (6th Cir. Sept. 5, 2007)("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that petitioner's claim is not entitled to relief under available Supreme Court precedent"); *Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007); *see also Monroe v. Smith,* 197 F. Supp. 2d 753, 763 (E.D. Mich. 2001) (habeas petitioner's claim that he is entitled to relief due to state trial judge's failure to grant him a new trial based on newly-discovered evidence is not cognizable in a habeas proceeding). Thus, Petitioner's claim that he is actually innocent and has newly discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).

*Lardie v. Birkett*, 2008 WL 474072 (E.D. Mich. Feb. 19, 2008); *see also Webb v. Wolfenbarger*, 2009 WL 369482 (E.D. Mich. Feb. 11, 2009)(same).

Petitioner has not submitted any evidence that, even assuming that a claim can be pleaded in habeas corpus, would demonstrate his legal actual innocence of the charges. The test now is whether, viewed in the light most favorable to the prosecution, a reasonable juror could have found from the evidence presented at trial that the prosecution proved each of the essential elements of the crimes charged beyond a reasonable doubt. *Jackson,* 443 U.S. at 318-19.  As discussed by the state appellate court, there was such evidence supporting petitioner's conviction.

Claims two and four are without merit.

## CLAIM THREE

In claim three, petitioner asserts that his sentence is "contrary to law and Constitution" because it "does not constitutionally meet the facts." *Petition*, at 9.

Petitioner argues that the trial court's July 20, 2006 re-imposition of seven years incarceration pursuant to *State v. Foster*, 109 Ohio St.3d 1 (2006), violated *State v. Bolton*, 143 Ohio App.3d 185 (Ohio App. 8th Dist. May 14, 2001), *see Opposition to Return of Writ*, Doc. No. 8; however, this presents an issue regarding the alleged violation of state law, which fails to present a claim appropriate for federal habeas corpus relief.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States.  28 U.S.C. §2254(a).  A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law

or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).  "'[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure'" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).  Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  Such are not the circumstances here.

Petitioner further appears to argue that his sentence is constitutionally invalid because he is not guilty of the charge. *See id.*  For the reasons discussed, *supra*, this Court is not persuaded by this argument.

To the extent that petitioner asserts, as he did in the Ohio Court of Appeals, that his sentence violates the Ex Post Facto Clause, the state appellate court rejected this claim as follows:

> [A]ppellant contends that the retroactive application of Foster to his sentencing is in violation of the Due Process and Ex Post Facto Clauses of the United States Constitution. However, subsequent to the time for submitting briefs in this case, this court addressed and rejected (in various cases) the issue raised by appellant. *See, e.g., State v. Gibson,* Franklin App. No. 06AP-509, 2006-Ohio-6899, at ¶ 18 ("the remedial holding of Foster does not violate appellant's due process rights, or the ex post facto principles contained therein"); *State v. Ragland*, Franklin App. No. 04AP-829, 2007-Ohio-836, at ¶ 9 ("the severance remedy chosen by the Supreme Court of Ohio in Foster does not violate ex post facto or due process principles"); *State v. Lowe*, Franklin App. No. 06AP-673, 2007-Ohio-504, at ¶ 9 (noting that this and other Ohio appellate courts have held that "the application of Foster to defendants who committed their offenses before that decision was released does not violate constitutional principles of due process, or operate as an ex post facto law").

> Accordingly, based upon the above authority, appellant's first
> assignment of error is without merit and is overruled.

*State v. Sieng, supra*, 2007 WL 949476. Again, petitioner has failed to establish that this

decision is unreasonable so as to justify federal habeas corpus relief. 28 U.S.C. §2254(d),

(e); *Williams v. Taylor, supra*.

This Court agrees with other courts which have rejected this same claim. *See*

*Hooks v. Sheets,* – F.3d –, 2010 WL 1655578 (6th Cir. April 27, 2010) (re-imposition of

consecutive terms of incarceration did not violate Ex Post Facto Clause); *Trewartha v.*

*Brunsman*, 2009 WL 614963 (S.D. Ohio March 5, 2009), citing *Pitts v. Warden,* 2008 WL

4758697 (N.D. Ohio Oct. 29, 2008) (footnote omitted); *Hooks v. Sheets*, 2008 WL 4533693

(S.D. Ohio Oct. 3, 2008); *Smith v. Wilson*, 2008 WL 4758696 (N.D. Ohio October 29,

2008).

Claim three is without merit.

## CONCLUSION

For all the foregoing reasons, petitioner's objections to the Magistrate Judge's *Report and Recommendation* are **OVERRULED**. The *Report and Recommendation* is **ADOPTED** and **AFFIRMED**. Petitioner's alternative request to withdraw his unexhausted claim five from the petition and proceed on his remaining exhausted claims hereby is **GRANTED**. However, this Court concludes that the remainder of petitioner's claims one through four are procedurally defaulted or without merit and therefore, this action is hereby **DISMISSED**.

Petitioner's motion for judgment in his favor and for an evidentiary hearing, see Doc. No. 15, is **DENIED**.

**IT IS SO ORDERED**.

**MICHAEL H. WATSON**
**UNITED STATES DISTRICT JUDGE**